Our last case for today is Padilla v. Redmont Properties, LLC, and we will hear first from Mr. Uraut. Mr. Uraut, you didn't file the motion, the Rule 60B motion, did you? That is correct, Your Honor. I did not file it. Somebody else did? That is correct. Well, let me tell you what bothers me. In the first place, there is no allegation of fraud on the part of the defendant. So the motion was made and dragged the defendant into court without any cause whatever. The defendant committed a fraud on the court. As I understand it, and I have it in front of me, you know what it is. The agreement that was presented to the judge to settle the FLSA case provided for the $8,000 fee. And that was the end of it. There was nothing wrong with that agreement, was there? Not in isolation, Your Honor. Okay. So there was no basis at all for the filing of the motion under Rule 60B against the defendant and making the defendant come to court, hire lawyers or whatever it is, and go to expense. That's first. The second thing, it seems to me, is the dispute here is between Mr. Padilla and the former lawyer. And there are a lot of places where that problem could be resolved. So, and thirdly, I can't imagine for a minute that the district judge entertained the motion, which alleged no fraud on the part of the, basically on the part of the defendant, and then went on and entered the order that was entered. Yes, Your Honor. I speak for myself. That's where I am. Thank you. May it please the Court. Jason Yerout and Freddie Rubio here for Carlos Padilla, the appellant in this case and the employee in this FLSA case. And to address your concerns, Judge Toflat, initially we were unaware of the defendant or the defendant's lawyer's involvement in the scheme and the misrepresentation to the court. But you can look at the court record and see it. The document was filed before the court, couldn't you? Yes, Your Honor. Well, the document before the court, pure and simple, wasn't it? Nothing on his face. Correct. The document. And the court entered the order in response to the document. That is true. So the court was explicit in saying this is an approval of an FLSA settlement, which included, of course, the attorney's fee. So I can't imagine. And that's what was alleged by the lawyer, Mr. Rubio, who filed the motion. He alleged that same thing. That's what I don't understand. Well, to give some context to how the Rule 60 motion got filed, Mr. Padilla approached Mr. Rubio because he was concerned about the fee disbursement in the Title VII case and in the FLSA case. Mr. Rubio wrote to Ms. Vicenta Bonet-Smith requesting clarification as to how the disbursements were made. And the response to that was a response from Vicenta Bonet-Smith telling Mr. Rubio, I'm not going to answer your questions. And if you continue down this road, I may. There was a case in which Mr. Rubio was operating under Rule 11 of the Rules of Civil Procedure, wasn't he? Of course. And all he had to do was go to the court file and find out the truth of the matter. Well, the truth was ultimately revealed in the December 2019 teleconference where Mr. Warren admitted to the court that he knew prior to the filing of the FLSA settlement that Vicenta Bonet-Smith intended to take 45% fee on the total. Of course he did. Anybody with any common sense would know that there was a contingency case and probably somewhere between a third and 45%. The defense obviously knew that. Everybody knew that. And I'm sure that the judge, when she approved the settlement, knew full well. She acknowledged that there are other claims in the case and they're being settled, but not this part of the settlement. That's correct. So the judge obviously was aware, being a judge for a long period of time, that there was a contingency in this case and other fees having to do with the other claims. Yes, the district court certainly was aware that there was an ancillary claim that was resolved. What the district court was not aware of and what was misrepresented to her by both Vicenta Bonet-Smith and David Warren was that they had hidden a 45% fee on the FLSA recovery from her in the Title VII agreement. And when we conducted the telephonic hearing, and I was not in the case at that time, I did not participate in the telephonic hearing, but David Warren admitted to the court that he knew that the 45% was on the total settlement and he acknowledged that if the 45% was on the total settlement, that that would include the FLSA recovery. And the court questioned him. The court questioned him on the fact that the FLSA joint motion to approve the settlement was a joint motion that included a joint representation. I'm sorry. Can I direct you to the 60B issue? How is their jurisdiction here? Are you saying here before the 11th? No, I'm sorry. In the district court. The jurisdiction arises from what we perceive to be the lens food scrutiny. The original motion to approve the FLSA settlement, of course, was submitted under lens food requiring judicial scrutiny over the FLSA settlement. And when there's an ancillary agreement that impacts the FLSA recovery, that agreement must be disclosed. I agree with you on that. I'm sort of more into the procedural aspect of this at the moment. And I'm trying to untangle how the court exercised jurisdiction over this. Was it under? Well, we filed a rule. I'm sorry. And there's a Rule 60 motion. And I thought it was like three different possible provisions, but I'm not seeing how any of them are necessarily satisfied here. Well, the Rule 60 motion is satisfied. And, in fact, the district court, at the conclusion of the evidentiary hearing, said she could no longer stand by that order intended to set it aside, presumably under Rule 60B. But any time there's a fraud on the court, there's a misrepresentation to the court. Counsel, I have the same problem as Judge Rosenbach has. There isn't any jurisdiction here. The only way there could be jurisdiction is if you can cite a case which says when a district judge approves a settlement, it retains jurisdiction as a matter of law under a federal statute to enforce the agreement. That's the only conceivable jurisdiction of the district court. Well, any time a court approves an ethical dispute. The district court could have said, I don't have jurisdiction in this case. This is an ethical dispute between the plaintiff and the former lawyer, and it could be resolved either in state court or we could resolve the problem in the district court's ethical setting. But there are ethical problems. In my view, the filing of the motion was in violation of Rule 11 and was an ethical problem and was obstruction of justice first. And it did it without jurisdiction. Then you have the problem between the former lawyer and the plaintiff, which is another ethical problem but not the court's business. When Padilla filed his state court complaint, it was before Judge Huey in Jefferson County. Judge Huey actually used to practice with Judge Heichel, the district court judge in this case. And when we were heard on the motion to dismiss in that case, Judge Huey told us, go back to the district court. He instructed us as parties to go back to the district court because the district court may be interested in hearing about this. Of course, because the judge wanted to get rid of this nasty problem. That judge's statement that it belonged to the district court is meaningless, and you know that. Absolutely meaningless. You could go back to the district court and have the district court discipline some lawyers. That's probably what he meant. This is a highly – this case is riddled with ethics and misbehavior. Take it back to the district judge and let the district judge handle those ethical problems. Well, Your Honor, if we chose the wrong vehicle by which to present a misrepresentation of the court, the duty of loyalty and the duty of candor is as old as common law jurisprudence. How do we write an opinion which says that a plaintiff can file a motion under Rule 60B alleging fraud on the court when the defendant did not defraud the court by the plaintiff's only admission? But the defendant did defraud. No, the defendant didn't defraud the court at all. The defendant presented a document to the court under the Fair Labor Standards Act which had the proper terms. But it did not disclose. The defendant didn't have to disclose anything else. All the defendant had to disclose and your motion, Rubio's motion alleged that. Well, we weren't aware at the time of the defendant's involvement. When we became aware and when the court became aware of the defendant's involvement, the defendant – Well, because the court never becomes aware unless it's at a telephone conference. But the court doesn't have – we cannot write an opinion that I speak for myself that says that that's appropriate behavior under Rule 60. Well, the fraud on the court, whether it was by Vicinta Bonet-Smith or by Redmont and David Warren, implicated the order in which the court entered. Can I ask you a question also? Did the settlement agreement in its wording state that it reserved – that the court preserved – no, I guess it wouldn't have been a settlement agreement, but the district court's order approving it. Did it state that the court reserved jurisdiction over the settlement agreement or anything of that nature? I do not believe it expressed the reserved jurisdiction. Of course, it adopted many of the terms and consistent with Lynn Foods, made a finding which would result in a stipulated judgment that it was a resolution of a bona fide dispute. And our position would be that that gives the court the power to then enforce it because the taking of the money then violates that court order. All right. Thank you. And you've reserved some time for rebuttal. You have five minutes left. All right. Mr. Spinks. Mr. Spinks, don't take any comfort for my questioning of your colleague there. Yes, Your Honor. Many a time, although second to that, your colleague wins. You have a serious ethical problem in addition to a jurisdictional problem in the district court in this case. I hope you understand that. Yes, Your Honor. Your Honor, James Spinks on behalf of Allie Bonanne-Smith PC. Your Honor, I do understand that and everything you've said to my colleague, I completely understand. While we're here today, as far as this court is concerned in the Eleventh Circuit, you know, this issue about candor on the court and what the court did and did not disclose and whether it should or should not have, whether the lawyer should or should not have disclosed it is a serious issue. My client takes it very seriously. But I think Your Honor is correct that it's not an issue for this court to address. And the reason it's not an issue for this court to address is simply because Mr. Padilla was not harmed or deprived as a result of it. Mr. Padilla signed all of the documents that were filed. Well, he was, I mean, he was harmed as a result of it, right? I mean, his position is that he didn't understand that there was going to be, he understood when he reviewed the settlement documents that he was going to, that the only attorney's fees associated with the FLSA claim would be the amount that was set aside in the $8,000 of which I guess his was 20-something hundred. And then what winds up happening is the money for the attorney's fees for the entire case is taken out of the whole thing. And so if you, you know, it's one thing or the other. Either there's a 72% rate, I guess, on the Title VII case, or there's a 45% rate on both parts of the case. And then that is not what was represented to the court. Yes, Your Honor. And the worst part about it is that, I mean, it's bad in both directions. I mean, it's bad for Mr. Padilla. But it's also, it does seem to be problematic with the court. I mean, the court specifically stated in adopting the, in dismissing the case and adopting the settlement agreement, that it was doing so because it found that this was an appropriate settlement, that Mr. Padilla was getting all of this money, that the attorney's fees seemed a little bit low, but they were justified. You know, all of these things. And then the district court said later, I never would have approved it under these circumstances if I had known that, you know, that what was really happening was there was going to be this other payment that was hidden from me. And, Your Honor, what I would say to your first comment about what Mr. Padilla understood is that Mr. Padilla chose not to testify at the evidentiary hearing about what he knew and when we knew it, what he knew or what he understood. What we do know is he signed all of the settlement agreements on the same day. It was no, it should not have been any misunderstanding from his perspective of what the total fees were going to be on the total settlement. Now, I understand in the abstract it's either that or this, but the documents speak for themselves. Well, but you hire a lawyer to help you with these things because you don't have the expertise in the law to be able to understand these things on your own. So I'm not sure that quite gets you there. Sure, and that's an important point. Because when Mr. Padilla, and it's very important to, I guess, our position as it relates to his claim for Rule 60 relief, is that he knew about this and actually sought separate counsel through Mr. Rubio three months before Judge Heikkila approved the settlement. They chose not to do anything about it. And the only reason, while Mr. Padilla didn't testify, Mr. Rubio said in his testimony before Judge Heikkila that they were waiting on the final result. Well, they knew what was petitioned for. They knew what the motion was requesting, approval of a specific settlement. Mr. Padilla knew what he had signed, and then they wait and don't raise any objection to the district court. Mr. Padilla receives all this money, waits until the following year, eight months after it happened, to file a circuit court lawsuit, and then waited until 365 days after Judge Heikkila approved the settlement to raise the issue back in the federal court. I'm just, when I say he's not harmed, I'm saying that he signed a declaration, as it relates to the FLSA, he signed a declaration in the court as part of the settlement that he had received all his wages and liquidated damages that he was entitled to. And when Judge Heikkila, after the dust had settled from the evidentiary hearing, after everyone had testified, she was fully apprised of everything. She made a simple request of Mr. Rubio, Mr. Rubio, would you go consult with Mr. Padilla and ask him whether or not he contends he received all his wages or not, that he was owed? And they filed its rule. I mean, really, it really doesn't even matter to this, other than to say that there are a lot of things going on here that the lawyer was doing that were unethical and inappropriate. And, you know, whatever may have happened between the lawyer and Mr. Padilla, still, even assuming that he understood what was going on and he was on board with it, which I don't think is clear from the record, but even assuming that, we still have the problem of hiding this from the court. And if your client thought that it was okay for her to obtain this kind of attorney's fee on the FLSA claim, it begs the question, why did she hide it? I mean, I don't understand what your client thought she was accomplishing if she didn't think that she was trying to fool the district court. Yes, Your Honor. And, you know, her testimony was that she relied on counsel and that she acknowledged that was something she should not have done. It was, you know, opposing counsel. And look, Judge Heikkila questioned Lucinda Bonet-Smith directly on the stand probably longer than anyone else did. And while this ethical concern is a serious one, Judge Heikkila sanctioned her. Mr. Smith, how did Bonet-Smith become a party in this case? Your Honor, she's not a party in the case. Well, then, if not a party in the case, doesn't belong in the appeal either. Yes, Your Honor. Do you agree with that? Yes, Your Honor, I do agree with it. And we were, because they filed a state court lawsuit, she retained counsel. State court judge instructed us to go back to the district court. But I understand your point. The state court judge saw a mess here and said go to the federal court. That has no force of law. Do you know of any case anywhere that that somehow confers jurisdiction on a district court? No, Your Honor, I do not know of any case. And I would just also comment that we believe our position is what Judge Heikkila did was at her discretion. And this appeal should just be dismissed or affirmed on her ruling. All right. Thank you, Mr. Spinks. We'll hear from Mr. Blair. Good morning, Your Honors. I'm Gordon Blair for the Redmont Appellees in this case. May it please the Court. What fraud did your client commit? What fraud on the Court did your client commit?   He was a good lawyer. He was a good lawyer. He never saw the fee agreement at issue. Didn't the attorney for your client know that the total amount of fees that counsel for Mr. Padilla was going to receive would include more in fees on the FLSA claim than were being disclosed in the agreement? I mean, isn't that what he testified to during the hearing? No, I don't believe so, Your Honor. I think that he understood from the mediator in the case and then he testified about a conversation with Vincente Bonnet-Smith where he understood that the $2,000, $2,666, I think, figure it was, was separately negotiated for the FLSA case. I think he testified that that was his understanding. And then she told him that at some point acknowledged that her fee had to total 45% of the entire settlement. And so obviously, you know, he's trying to plug in numbers like he talked about in the testimony and he applied it. Excuse me. If he knew that it had to total 45% of the entire settlement and he knew that part of that settlement was for the FLSA claim, then he knew that there was going to be more in fees paid on the FLSA claim than the $2,600 or whatever it was that was disclosed in the agreement. Isn't that right? But on the, there would be more fees paid on the Title VII. Because here we have, you know, David Warren did a good job. He knew, though, that the idea was that there was a 45% contingency fee on the whole thing, not a 72% contingency fee on the Title VII and whatever the percentage left was on the FLSA claim. So, I mean, he had to know that what they were doing was hiding the ball from the district court. I mean, how could he not have known that when he was working with Ms. Smith to be able to figure out how they were going to write this up? And so there, I would go back to what he testified he learned from the mediator, that it had been separately negotiated, the $2,000 and some change sum. And then also he testified about a conversation that he had had with Vincenta Bonnet-Smith where she said the same thing, that the $2,000-some-odd is for the FLSA settlement. Counsel, would, under Alabama law, would Bonnet-Smith have a lien on the percentage of the proceeds of the overall, let's say the Title VII money? There's money under FLSA and then a settlement of the other case. Under Alabama law, would the plaintiff's lawyer have a lien on the proceeds of the second case? Forget the FLSA case. I don't know the answer to that, so I would just have to- You can't answer it or you don't know? I don't know. In a lot of states, a plaintiff's lawyer has a lien, in effect, on a percentage of the settlement. Because I'll speak about Florida. What happens is usually is the defendant sends the money to the plaintiff's lawyer and it goes into the plaintiff's trust account. And then the plaintiff's lawyer disperses the money in accordance with the agreement on how it's to be dispersed out of the trust account. And, for example, under Florida law, there would be a lien. The plaintiff's lawyer would have a lien on a percentage of the money in the trust account. And then would disperse the balance to the plaintiff instead of giving all of it to the plaintiff and then suing the plaintiff for the fee. You follow me? Understood. One point beyond that that I would like to make is that their argument with respect to the FLSA, that Mr. Padilla's FLSA recovery was somehow compromised, is just a false premise. He testified in his declaration that, with the assistance of counsel, that he had reviewed all of his time records and that he received all of his unpaid wages, all of his unpaid overtimes and liquidated damages under the FLSA. And if anything, with respect to the FLSA, as the parties were structuring the agreement, you know, I think that it shows that the FLSA was, recovery was protected. Because those emails that I talked about that, you know, David Warren was very transparent. When she asked for an increased fee, he, the parties agree to increase the amount of the fee on the Title VII side and then decrease the plaintiff's recovery both on the Title VII side. The FLSA settlement, I mean, sorry, the FLSA recovery to the plaintiff was simply not affected. The other thing that I would like to point out here is that, you know, I sometimes kind of think of this as the greed case. First, you know, Redmont Gardens, the Redmont appellees, they paid full value to settle that FLSA case. And then they paid more than $100,000 to settle the Title VII case. And, you know, if we look in the record, there was a bar complaint filed against Vincente Bonnet Smith. And Padilla said to the bar that he had never felt discriminated against in any way, either physically or verbally. So if there's been any miscarriage of justice here, it's Redmont paying more than $100,000 to settle that claim. And then after that, there's an allegation of an improper excessive fee on the Title VII side. And after that, there's a sanction. And the lawyers want attorney's fees on top of that. If there's any unfairness here, I think it's been borne by Redmont appellees more than anybody else. Thank you, counsel. Mr. Yearout, you have five minutes. Thank you. I can dispose of one issue raised by Mr. Spinks rather quickly. At the beginning of the evidentiary hearing, volume three, page 21, the court said, I do not think I need to hear from Mr. Padilla today. But they wanted to call him as a witness. They certainly could have, and questioned him in any respect that they desired. And this was in, I believe, either one of the opposing parties' briefs. They cited a case, Owen v. Advocator Group, 2007, Westlaw 308-1908. And that requires ancillary claims that impact a FLSA claim to be presented to the court. And there's really no question that Vicenta Smith knew and David Warren knew that there was an ancillary agreement impacting the FLSA recovery such that it must have been disclosed to the trial court. Now, a court in determining and maintaining its own integrity has the right to vindicate its orders when they have been flouted and when they have been ignored. And that's what happened in this case by the lawyers and the parties when they presented the FLSA settlement to the district court. Knowing full well that it did not accurately represent the fees that were going to be recovered on the FLSA settlement. Lynn Fudge requires and relies on the integrity of the lawyers presenting the case, relying on an adversarial process such that the court can engage in the judicial scrutiny necessary to approve FLSA settlements. And that was deprived of the court in this case by both lawyers involved. And that judicial scrutiny, when it breaks down, the entire Lynn's Food scrutiny that is trying to ensure and follow the congressional intent of the FLSA to ensure that the employee receives their wages and damages without regard to fees was completely undermined in this settlement. The suggestion that he got this $45,000 check and so he got his FLSA wages is almost beyond belief. The respondents, the appellants, appellees think that if they close their eyes to see what's plainly visible or hold their nose so they don't smell the rot that was permeating that motion to approve the FLSA settlement because it intentionally withheld information from the court. It's simply not worthy of belief. In the evidentiary hearing, David Warren admitted that he knew that the 45% was from the total settlement. David Warren admitted in the evidentiary hearing that he knew that $78,750, the amount of the fee claimed by Vicenta Smith was 45% of the total and that she had a 45% contract. That simply cannot be ignored. And I'm going to mispronounce this name. I'm almost certain. The Kokkonen case, First Guardian Life Insurance Company, Supreme Court case from 1994. That was the case I was referring to a moment ago. It says that the court has ancillary jurisdiction after the case has been closed. That enables the court to function successfully. That is to manage the proceedings, to vindicate its authority, and to effectuate its doctrines. And whether Padilla brought that to the court's attention through an improper vehicle, the wrong motion, we were still giving the court, the district court, an opportunity to correct a fraud upon it. A misrepresentation to it. And unfortunately, the district court, in sort of inflating what we believe the FLSA into a sanction, failed to effectuate either purpose. Because the purpose of a sanction, of course, is to deter. And simply requiring a person that has wrongfully withheld money to return that money to the court is not good enough because it does not effectuate the deterrent effect. And failing to address the FLSA-mandated wages and liquidated damages to ensure under Lynn Foods that he receives that full relief was also an abuse of discretion and requires remand of this case. And we would ask the court to remand the case with instructions to the district court to revisit the sanction and to conduct a follow-up Lynn Foods hearing. Thank you, counsel. We'll be in recess until tomorrow. All rise. Thank you.